16-2900, 16-2927 Board of Education of Woodland Community Consolidated School District 50 v IL State Board of Education We are interested here with a very single proposition and that proposition is whether students attending charter schools should be used in determining the average daily attendance for a school district. So let's keep the argument to that and not go into all sorts of extraneous things. I can't understand the convoluted argument that they're their own school district or something, these charter schools. Keep it to this issue. Go ahead. Okay, Your Honor. Thank you very much and good morning, Your Honors. May it please the Court, Counsel, Brett White on behalf of the Illinois State Board of Education. Your Honors, this Court should reverse the circuit court's judgment because the State Board's method of calculating the per capita tuition charge for local districts where students are attending a state-authorized charter school is correct and because the State Board was statutorily authorized to deduct general state aid overpayments from the school districts for the prior period. We don't just overpayment. We determine whether their equation is correct. Absolutely. Let's just get to the equation. Sure. Absolutely, Your Honor. Why should they not be included within average daily attendance to determine the amount of aid that is given to the charter schools? Because, Your Honor, under Section 18-3 of the school code sets forth the formula for calculating the per capita tuition charge. The point of the per capita tuition charge is to measure the expenditure by the district on educating students in its schools. How does it say that? It does, Your Honor. Where does it say that? Where does it say students within its schools? If you get us to bite on that, you win. If you don't bite on that, you lose. Go ahead. The Section 18-3 provides, sets forth the numerator, the expenses that must be totaled in the top line of the equation. And then it provides that it must be divided by the average daily attendance. Now the first sentence of that paragraph that sets forth the equation talks about the amount of tuition for students attending public schools. But actually it says, if you read it literally, it says the total annual per capita cost shall be determined by total. Tuition is something that you people included to come up with your PCTC. Is the word tuition anywhere in the first sentence? Do you see it? The word tuition is literally in the first sentence of that section. It says the amount of tuition of such children attending the schools. Right. And it's based on an annual per capita cost. Yes, a per capita cost. And so going back to that first sentence, talking about the amount of tuition, by multiplying the number of such children in those schools by the total cost that you arrive at. What does it say you're telling me? So this is the second paragraph of Section 18-3. The amount of the tuition for such children attending public schools of the district shall be determined by the State Superintendent of Education by multiplying the number of such children in average daily attendance in such schools by the total annual per capita cost of administering the schools of the district. So those references to such children in such schools means there's children actually attending those schools. And a lot of that makes sense because the point of this equation is to determine how much the district spends on educating a child. The numerator looks at the district's actual expenses, the actual costs incurred by the district in providing education to school children. What is the relationship between the amount of money the district has available to it to educate these children and the total cost of tuition? What's the relationship between those two numbers? Well, Your Honor, by the total amount of resources the district has available to it, do you mean from all sources? For instance, public schools, traditional public schools. Yeah. You can say from all sources. Go ahead. From all sources? Yeah. Well, those sources... Well, this calculation is measuring what it actually spends. Spends per child. Spends per child. It may run surpluses. So it may have more resources if there's a good property tax year and it gets more property tax revenues to the school district. It may not actually spend all of its resources on education. Some school districts do run surpluses. Okay. Go ahead. So there's a difference between the resources available and the empirical cost, what the district has actually spent on educating children. But again, those numbers that are reflected in the numerator reflect, you know, the operational costs for the school, how much it has spent. But what the question becomes, what has the school spent that money on? The school has spent that money on their children in its actual classrooms. When you add students for which the school district bears no cost of educating to the denominator, you're destroying the calculation. The top part of the calculation is it reflects the empirical cost of educating pupils by the students in the last year. Okay. And Counselor, how do we know about that no cost expenditure for the kids in charter school? What number is that? Do we have any idea at all as far as the computation is concerned? Or is that even important to us now? Well, you know, I would suggest that it's not important because looking at the equation, the factors that go into the equation and the state board has worksheets. There are numerous worksheets that districts fill out in these calculations and they're all complex. But the school district is reporting its actual expenses. When a charter school is commission authorized, the school district is not spending money on that school, on educating their children. Because they're diverting the amount of money that's attributable to their tuition from their revenues and sending it over to the charter school. So they certainly are supporting the charter schools. They're supposed to be supporting it, either 75% at the minimum or 125% of the maximum of the pupil. Well, you people seem to agree that this total cost in 18-3 and the equation for the amount of money that's to be diverted to the charter schools, which doesn't speak in terms of total or per capita cost, but rather speaks in terms of, let me see what the name of it is. Charter school law doesn't talk in terms of per capita tuition costs. You people seem to agree that per capita student tuition is used in 27A and per capita cost is used in 18-3 are synonyms. That's correct, Your Honor. Okay, I think both of you say that. No, there's no dispute on that, Your Honor. And I would add that since the majority of the briefing and since the relevant time, Section 11, 27A-11B has been amended by the General Assembly to reflect that the percentage of the per capita tuition cost that must go to the charter school, it's no longer a range between 75% and 125%. It's now 97% and 103%. Yeah, but we're concerned with the statute as it existed in 2015. Absolutely, and that doesn't actually change the operation for calculation of the per capita tuition cost in any regard. But again, Your Honor, when it is a commission-authorized school, you're correct that the local district supports that school because some funds are allocated from the state money that would otherwise be due to the district to that school. But that does not mean that the school district is expending the resources that are calculated in the top part of the equation on those students. That's a separate deduction. A separate deduction that happens after determining how much the school has spent educating the students that attend its actual schools. Well, that's if we buy your argument that that equation is intended to determine, when you use average student cost, the amount of, well, if it determines the per capita cost, then the equation before it's divided by average daily attendance means gross cost, does it not? Per capita divides gross to determine individual. So it's the gross cost. Acknowledging, yes, acknowledging the certain set-offs and offsetting costs and the depreciation of violence that is factored into it. But the depreciation is part of the equation. It is, absolutely. So the top part of the equation is the gross cost to educate the students. Now you say that's to be determined only by the students within the school district, attending schools operated by the school district, and they say it's to be determined by all the students within the district, including the charter schools. The cost of the charter schools, when it's a commission-authorized charter school, are not added into that top part of the equation. And so under a plaintiff's reading, you are dividing the top part of the equation, which is measuring the gross cost to the district, of educating the students in the schools that do not include, those costs do not include the operation of a commission-authorized charter school, by a number of students that's not equal to the number of students in actually only the school district schools. Well, that's what I was kind of asking you before. Yes. So we don't know what that number is, as far as the cost of a student in a charter school. Well, it may not be actually in this record, but those calculations are made. And so, for instance, the charter schools do their own reporting to, or in this case, pretty crossing charter school, because it's its own education authority, so it did its own reporting to the state board. Let me ask you this. This process was in place for 15 years in another manner, correct? That is correct, Your Honor. So was there an epiphany, or what, though? Is there a history of why the change? Yes, that is developed in the record in the summary judgment brief in this case, Your Honor. Essentially, the state board discovered an error in a calculation. The error was originally brought to light by a different commission-authorized charter school, Southland College Prep in Richmond Park. They raised this issue about a discrepancy they observed in the calculation of the per capita tuition charge to the state board. The state board reexamined and then made this determination that the figures, they should not be a consolidated average daily attendance figure, that instead that's distorting the equation. So that's what precipitated the change. All right. So a ruling in this case would affect every charter school, or just the charter schools that are commission-authorized? It would affect the eight charter schools that are commission-authorized. Can I ask a question about your argument relating to the such children? Sure, Your Honor. Such children in 18-3 refers to average daily attendance of students in certain specified categories, does it not? Of those attending public schools maintained by the school district? Yes. The second paragraph doesn't say that it has any relationship to the first paragraph. The second paragraph is the total cost per capita of all students. It's not the total cost per capita of such students that fall within certain specified categories. The number of such children in the average daily attendance of public schools maintained by the school district is to be multiplied by 1.2 times the annual per capita cost of administering the schools in the district. It doesn't contain any provision setting forth the manner in which the average daily attendance of local school districts is determined for the second paragraph of the formula. There is absolutely nothing in there. The average daily attendance definition also comes from Section 18-805C1 of the school code, and that sets forth an average daily attendance figure should be the actual number of pupils in attendance of each school district as further averaged for the best three months of pupil attendance for each school district. Yeah, there's no question about it. But kids that are attending charter schools are within the school district. Your Honor, that's not... Somewhere else, we can send them away. Your Honor, that's not the case for commission-authorized charter schools. And let's get to the argument. I know you prefaced this, but let me get into this. Stay away from that. The argument makes no sense. The charter schools are located within the district. They're not islands within the district. They're there. They're being funded from district funds. Statutorily, they are islands within the district, Your Honor, because the district does not oversee them. The State Board's administrative regulations make clear in certain circumstances that, for instance, for certain requirements like compliance with the Individuals with Disabilities and Education Act, that imposes certain requirements on federally, federal term, local educational agencies. And those regulations make clear that when it is a commission-authorized charter school, it is its own local education agency. That means it is an island. What does a local education agency have to do with whether it's within the district? A local education agency is usually a district. By saying it's a charter school... Your Honor, is there something in the statute that says a local education agency equals school district? The statute specifically refers to the federal definition. And the federal definition says that a local education agency means a public board of education or other public authority legally constituted within a state for either administrative control or direction of or to pursue a service function for public elementary or secondary schools. Why can't a local public agency be included within a school district? Well, the rest of the definition goes on to say that a school district is a local education agency. But the regulations, for instance, that we said... Why don't we stay... Look here. Why don't we stay on the question of whether they're included within average daily attendance and tell me what we are supposed to do with the section of the statute that's specific... I mean, I'm speaking now of the charter school's law that says, quote, for the purposes of the school code, pupils enrolled in a charter school shall be included in the pupil enrollment of the school district within which the pupil resides. What are we supposed to do with that? Absolutely, Your Honor. So that's the first sentence of 27A-11A. The first we do is we realize that when read in light of Section 18-3, which is the definition of the per capita tuition charge, or at least how it's being read to be that by all the parties, and Section 27A-5K, which states that a charter school is its own authority, we realize that this provision is ambiguous. That means the State Board's construction of it should get deference. Now, what's ambiguous about a statement in the statute that says that pupils enrolled in a charter school shall be included in the pupil enrollment of the school district within which the pupil resides? Do you create the ambiguity by this business you have about charter schools are not in the school district? Is that how you create the ambiguity? Well, the statute creates the ambiguity when you read the different provisions together. What's ambiguous about that? Because it makes no sense in operation to consider the per capita cost to a school district of educating a child should include, should factor in, students for which it bears no cost of educating. That's an absurd result. It does bear a cost of educating. The total cost of that student, the 75% for 125%, is diverted from the school district to the charter school. That's a cost. It comes out of their revenue. That is a cost. So there's a cost to the school district of educating children in a charter school from 75% to 125% of the per capita cost. Sure, but that is not a cost that's included in the calculation, the numerator of the calculation. The calculation, the per capita tuition charge calculation, examines the empirical cost, what the district spent on educating students. That cost that you're talking about, the amount, the reallocated amount, is not included in the numerator of that equation. We realize that if the student is included as it had been included from 1996 all the way to then, then the per capita cost for educating students in both schools operated by the school district and the charter school will be exactly the same. If you do not include those children within the equation, then the per capita cost for educating students, charter school vis-a-vis the school district, are different. And they're dramatically different. They are different. That reflects reality, Your Honor. That reflects the actual correct application of the mathematical formula. But the mathematical formula in 18-3 is not a mathematical formula for determining the cost of educating a student in a charter school. It only is used to determine the amount to be diverted from the school district to the charter school. But you cannot make the argument that the cost of educating, there is no cost to the school district for educating kids in charter schools. I'm not making the argument that the school district money is not allocated to the charter school. I am making the argument that in terms of determining the per capita tuition charge, that part, the amount of money allocated to the charter school, is not factored in. That is not included in the numerator as set forth in 18-3. It does not include money. But that wouldn't make any difference unless you suggest, as you have suggested at the very beginning, we bite on the notion that the formula in 18-3 is to determine the per capita cost only of educating the students that attend district schools. If we don't accept that, then this argument that you're making makes no sense. The section 11-B of the charter school's law references a percentage that's equivalent to the school district's per capita student tuition. There's no question we're still looking for the school district's per capita. Exactly. With or without the charter school students. Your Honor, if a school district spends $100 in a year educating students and it has 10 students, then the per capita tuition charge is $10. But if in the district there's a commission-authorized school that spends $20 a year educating 5 students, when you add those 5 students to the divisor of the equation and divide 100 now by 15, that distorts it. That's not the actual amount of money that the district has spent on educating children. The number is distorted if you don't change the numerator. But the numerator doesn't change. The numerator does not include the amount that the commission-authorized school spent on educating children. In that way, it's distorted. Yes, Your Honor? Can I ask you a question? Absolutely. In the trial court's order, the trial court finds that funding for charter school comes from the funds allocated to the local school district. Is that where the funding comes from for commissioned schools, from the local school district, or is it from State Board? Well, the funding literally goes from the State Board directly to the commission. But the money comes from, is pulled out of what otherwise would have been the General State, in the past, what otherwise would have been the General State Aid Award to the local district. So it's State money. Yeah, but it's money that's been pulled away from the school districts. Yes. Okay. But it is State money. It's not affecting the local money, the property tax revenue money that the local district gets. That's not being diverted in this situation. Okay. Let me hear from your opponent. Thank you, sir. Thank you, Your Honors. Your Honors, may it please the Court. My name is James Petrangela. I'm Counsel for the Plaintiff-Appellees, Woodland and Fremont School Districts in Lake County. Your Honors, the flaw in the State Board's reasoning concerning whether it makes sense to apply the per capita formula from 18-3 to the charter school student situation involving commissioned students is that the State Board makes their analysis in the vacuum of the formula of Section 18-3 and completely disregards the language of 27A-11A, which informs the State Board, the school districts, and this Court that the charter school students are to be blended with the local school district students for purposes of the ADA. The State Board argues that 18-3 is not a good fit for charter school students. Essentially, what the State Board is arguing is that the legislature chose a formula that doesn't bear a rational relation to how school districts and charter schools within those districts, how their relationship exists. I think we can, first of all, all agree that this is a terribly worded statute. Both of them are. They're horrible. They ought to be rewritten. But be that as it may. But we're stuck with what the legislature decided in this case. And the legislature borrowed from 18-3. And I think it's essential in this case for us to recognize that the purpose of 18-3 originally, that the formula from that statute, as well as the formula that comes from 10-20.12A of the school code, those are formulas used to determine the cost of educating a student within a school district, such that when a student, a non-taxpaying student, wants to attend that school district, whether it's an orphan or somebody in a foster home, as is the case in 18-3, or a non-resident student, as is the case of 10-20.12A, those costs, we can come up with a number to establish what the cost for the local school district is. Once that formula was borrowed. Let me ask you. Can you address the missing number and the numerator that counsel keeps referring to? Well, the problem with the numerator that the state bill does not seem to acknowledge in the briefs or the argument is that there are all kinds of aspects of the numerator that have no application to the relationship between the school districts and the local charter school as well. For example, if we take the operating costs of, and I'm going to just use Woodland School District as an example. If we take their operating costs, which is the numerator, as part of the formula, Woodland provides a million-dollar transportation plan for its students that the charter school does not. Charter schools are free from the regulations of the state, of the school code, and the charter school does not have to provide transportation for its students. Yet, the legislature has instructed that this is the formula to use. There are all kinds of operational costs at the school district that the charter school does not have. Well, certainly the operation of the physical plans of the school districts doesn't change based on the amount of students there are. It remains the same. It's static. The amount of money that it costs to heat a high school doesn't change whether you have 100 students in there or you have 500 students. The number of buses used to transport, the number of teachers and assistants used to educate those students is certainly fluid. So there are all kinds of aspects of this formula that the legislature has adopted that does not have an apples-to-apples relationship between the school district and the charter school. And so the state board's emphasis on the denominator, and their argument that it doesn't make sense to blend the charter school students, their ADA, with the local school district's charter students, that there's no rational relationship there, that same argument applies to the numerator for the operational costs. So what I'm suggesting to this court is there are all kinds of aspects of that formula that don't have a rational relationship to the amount of money it costs to educate the student at the charter school. Well, that's what I'm trying to get a handle on. What is missing from the numerator? A lot. A lot. And yet we are instructed from the legislature that this is the formula to be used. The legislature merely adopted that formula. That formula existed long before the charter school's law existed. And so there may be flaws in the use of that formula. There may be reasons why the state board thinks this isn't the right formula to use. But the state board does not have the discretion, nor does this court, to instruct the legislature that you wrote this law wrong and we're not going to use the formula. Well, are they saying that or are they just interpreting it the way they think it should be interpreted? But they can't interpret what is otherwise an unambiguous statute. What they're saying is, and I think it's still to its finest, is the requirement within the charter school law that pupils enrolled in the charter school to be included in pupil enrollment in the district is ambiguous as it relates to 18-3. I think that's right. I understand that that's their argument. But it's not ambiguous for all the reasons I've laid out and the reasons I'd like to continue. There is a flaw in the way that they are interpreting the application of 18-3. They are interpreting 18-3 in the context of what 18-3 was originally designed for. When the legislature adopted that formula, the legislature really picked a formula to use. But there's nothing in the charter school's law that suggests that when it borrowed that formula, that the legislature intended it to have an absolute 100 percent application to the situation. The legislature merely chose the formula that the state board was already using for other aspects of school reform. It doesn't seem reasonable. There are monies coming into charter schools that are not coming into the public schools. Well, that's an aspect of this analysis, absolutely. But there's also money coming into the school district that are not going into the charter schools. The school districts get property tax money. Charter schools don't get property tax money. They get those property taxes in a flow-through aspect. The money that is typically paid to the school districts from the state is a share. It's a percentage of what it takes to ultimately educate that student. In Woodland's case, I believe it's approximately 30 percent. I don't have that exact number. But the majority of funding that a school district uses to educate a student comes from their local property taxes. Yet the amount of funding that goes to the charter school student is 100 percent of not the per capita state aid cost. It's the per capita total cost to educate the student. So if it costs Woodland and Fremont $14,000 to educate a student, and only $5,000 of that comes from the state, the charter school isn't only getting $5,000 per student. They're getting the $14,000. And therefore, they're getting the hour-long tax share of that student when that tuition payment is paid. Who are they getting the $14,000 from? It comes ultimately from the local school district's coffers. It's just paid by the State Board of Education. I understand that, but they're not getting a percentage of local property taxes. They effectively are, Your Honor. The formula doesn't say that. The formula says they get from 75 percent to 125 percent of the amount determined by that formula. And that formula does not include property taxes. In fact, the formula itself does not address where the funds are to be taken from. No, no, not where they're taken from. It's how much they get. Correct. It's the cost of educating the students. Where those funds, who's actually paying those funds is a separate conversation. But the cost of educating the students is what the legislature has defined it to be. And they have defined the total annual per capita cost only to include what's in this formula. And nowhere in this formula is that the wrong property tax. We are not in disagreement on that point, Your Honor. So the only thing they get is the result of this equation times the number of pupils they have. Yes. You live in a district like I do, they're spending $16,000, $17,000, $18,000 a year on a child. The majority of which is coming from property taxes, not from what's included within this equation, which would be federal, state sources except those for common school fund, less offsetting revenue from federal sources, less student and community service revenues, plus depreciation allowance. Where in this formula is included property taxes? It's not in the formula. It's in the effect of how the payment is made. So the amount, $16,000 if we use that number, per student, is to be subtracted from the funds that are otherwise due to the school district from the state. We understand that, but that doesn't mean that the amount that the charter school is receiving from these funds is from the total amount of revenue available to the school district. Correct. It only comes from the state board. The state, no, no, I don't care where it comes from. I mean, if I have two pockets and $5 in each pocket, I have $10. If you only get a percentage of what's in my left pocket, you only get a percentage of $5, not $10. And if your left pocket is property taxes and your right pocket is state board money, and if it takes $8 to educate that student, you are taking some of the money from your property taxes. There's no question you can take it from both pockets, but the fact of the matter is it's only calculated based on what's in one of the pockets, not what's in both of the pockets. So the question that I have is if we, by the board's definition of average daily attendance, not to include students within a charter school, then the amount diverted from a school district, assuming 100% and we don't assume 75% or 125%, the amount diverted from the school district for this per capita tuition cost will not be equal to what would remain if you divided the total amount of revenue that the school district has pursuant to this formula minus the amount of the diversion and then divided it by the number of students. Because in that particular case, the charter school would be getting much more than would be left over for the remainder of the students within the district. If you include them, then it's the same once you make the division. If you subtract the amount of diversion from the funds available to the school district. The flaw in what the State Board suggests is that in order to overcome the plain language of 27A-11, there has to be an unjust or an absurd result. The standard isn't that the State Board's interpretation is reasonable. We have plain language in 27A-11. The rules of statutory construction require an unjust or an absurd result to overcome that language. The legislature has given clear direction to the State Board. You are to count the students from the charter school as though enrolled at the local school district. Therefore, you must blend that ADA number. The State Board suggests that we should not blend that number for purposes of determining the PCTC, yet the State Board acknowledges that it does blend that number for purposes of calculating the state aid claim. The State Board's position also creates a disjunction in that charter school students that are locally authorized are blended in that ADA portion of the calculation, yet for commission-authorized schools, the State Board would not have them blended. There is no suggestion in the charter school's law that the legislature intended to create some sort of bifurcated funding system. There is a single funding system for all charter school students. There is no language expressed in Article 27A that suggests that the legislature intended charter school students that are locally authorized to be funded at a rate different than the commission-authorized students. In fact, 27A-11B requires that there be no incentive or disincentive in a funding formula. That's exactly what would happen in this case. Counsel, let me ask you, as far as reimbursement, I know you understand there shouldn't be any because there was no claim filed, right? The claim that was filed was correct. There was no error in the actual general state aid claim. What happens is after that claim is filed, the State Board of Education would blend the data from the charter schools to alter the claim. And so there was no error on the state aid claim that was filed. In fact, the state aid claim is fixed. Where the error occurs is after that money should be put in a pot and set aside for Woodland or Fremont, the state board then determines from that pot how much it should divert from those school districts to the center of the charter schools. So there is no error in the claim. So generally, there's two questions because there was a settlement with the charter school, right? There was. And so now they're asking for money to be withheld from your schools? Yes, under the provision of the school code that allows them to get essentially back to it, back pay for three years. Has that happened? Has that happened? Yes. What happened was the state board said going forward for a period of three years, we're going to stop the formula as we had and we're going to deduct additionally from what you would receive an amount equal to the $200,000. Okay. Let's say that goes forward. Assume that goes forward. And we're in the time frame now where let's say we agree with the state board as far as our analysis here. What is the loss to your school districts relative to how you're operating now as far as cost per student? I mean, what overall? I know we had a lot of legation on this case. And what's the, do you know what the number would be in your school district? So it depends year to year on the fluctuation of the per capita charge as well as the enrollment fluctuation at the charter school. But it's approximately $165,000 a year for Woodland and approximately $25,000 a year for Fremont. That's the yearly damage here. And again, I must emphasize that approximate numbers because it's a moving, the tuition amount is moving. So what the state board, the essence of the argument is that there should be an implicit exception created by this court. That there should be a carve out for 27A-11A, an exception that we don't, we shouldn't. Well, what they want us to say is that 27A-11A does not apply to 18-3 is what they want us to say. In the context of commission schools? Because even, no, even about commission schools. They want us to say that the requirement of 27A-11A, which says that the pupils at the charter schools are to be counted in the enrollment of school districts, does not apply to the determination to be made by the application of the formula in 18-3. For commission off all schools only. And that's significant. They are creating a bifurcated financing system under Article 27A for all other charter schools. For charter schools that are authorized by the local school districts, they would not apply this rule. And so you would create a system. If you took a Woodland and found the mirror image of Woodland somewhere else that had a locally authorized charter school, with the exact same PCTC, the exact same formula, under the state board's application, they would blend the charter school students for the locally authorized charter school, but they would not do it for the commission authorized charter school. Is there a referendum school as well? Is there a referendum school? Well, that is an option under the school code. I don't believe, I'm not aware, of there ever being a charter school opened by referendum. And it certainly was not. Well, we wouldn't know what would apply then. It's just not a ripe issue before the courts. And that's another significant flaw in their reasoning, is that they would apply a different analysis for the two types of charter schools. Yet there is no distinction for funding purposes between the types of charter schools. For all purposes, the funding is the same. Whether they're wrong in applying a different analysis for commission schools and non-commissioned schools is irrelevant to the question of whether children attending any charter school are to be counted in determining the amount that's yielded from the application of the formula in 1838. It makes no difference. Well, I would suggest that it's relevant only in the sense that the state board acknowledges that they do count them for the vast majority of charter schools out there. They do blend that rate. It's only for the handful of commission-authorized schools that they decide not to count them. And if that was the legislative intent, I posit to this court that there would be a clear expression of that intent in Article 27A. This is a theory that has been developed by the state board. There is no evidence in the charter schools law that the legislature intended for this application. To the contrary, we have the crystal clear language of 27A-11A that says charter school students shall be counted as enrolled at the local school district. If the state board is not going to be doing that, they are not going to be giving effect to the legislative intent. And to overcome that plain language, they must establish that it would be an absurd or an unjust result. And given the fact that local school districts finance the charter schools, given the fact that it is the school districts that effectively are the underwriters of the charter school, that is not an unjust result to count those students because there are costs to the local school district. There may not be a cost in the formula itself, but that's because the formula was borrowed from a scheme that existed prior to charter schools. Okay. Counsel, thank you. Rebel? Thank you, Your Honors. A couple of brief points, if I may. First, Your Honors, it is not the case that the charter schools are being paid off local school district coffers. Property tax money is not being used to fund charter schools. Section 9K, so 27A-9F, specifies that the state board withholds funds otherwise due to the district and pays those to commission authorized charter schools. The state board is not reaching into a property tax pool and sending property tax money to a charter school. Additionally, with regard to the per capita tuition charge, this court in January in the Waukegan Charter School case, in footnote 1, stated the per capita tuition charge is essentially a calculation used to quantify the amount of money a school district pays from its own resources for each student enrolled in its schools. In its schools. When it's a commission authorized charter school, that school is not one of the district schools. When it is a district authorized charter school, that charter school is one of the district schools. The district is educating those pupils in that instance. And in those cases... Is that in your brief? Your Honor, that decision came out on January 25th, and so... Did you file a motion to cite additional authority that your opponent might know about? We did not, Your Honor, but we'd certainly be happy to do that if you would like to brief me on this case. I will file a motion. And what's the cite? The cite is 2018, Ill Act 1st, 162084. And I'll file a motion today for you to cite that. As I was saying, though, when a school is a district authorized school, the costs of operating those charter schools are added into the numerator of the per capita tuition charge calculation. So it makes sense to add the students attending those charter schools into the divisor, into the average daily attendance. And in that way, 27A11A, the first sentence, has meaning under the state board's interpretation. The state board's interpretation is that when it's a district authorized school, you add the charter school costs in together, and you add the pupils into the average daily attendance. But when it is a commission authorized school, the costs of operating the school are not added into the numerator of the per capita tuition charge. And so it makes no sense because the General Assembly made a decision in Section 11B that charter schools shall be funded on some percentage of the per capita tuition charge. In other words, the district's cost of educating a pupil and calculating the cost, the actual expenses that a district makes in educating a child. You divide its expenses by the students in its classrooms. That is the true cost that it's spent on educating the children. Counsel, are there rules and regulations promulgated relative to the Charter School Act? There are rules and regulations. Is any of this contained in the rules and regulations as far as computational things? No, this is not. A lot of this comes into a way that the spreadsheets that you fill out on the website. And if this court wants further factual development on that, a remand, we could develop that. Thank you. The last point I'd like to make is to turn to the second, the subsidiary question, which is the recomputation claim. And, Justice Connors, I know you raised a point about the question about this. And this is Section 2. There's no question if it was wrong, you have a right to, under the statute, recalculate. There's no question about that. The question is, was it wrong? Okay. I totally agree with that. You have a whole section you brief on the deference we're supposed to give to agencies in their interpretation of the statute. Which interpretation should we give reference to, the one that existed from 1996 to 2015, or the one that was redefined in 2015? I mean, we should give reference to the interpretation that it has now, the latest one. Why? Because that is the way the agency is interpreting the statute. And the agency changes with what? Who appoints the school board? How do they get elected to your board? How do they wind up on the board? Sure. But this was not necessarily made. The evidence in the record indicates that the programmatic people that are in charge, these are not state agency members that change with an election. These are the actual operational experts. But that's who you say he came up with. Who's on the school board? Who's on the board, the state board? On the state board of education? Yeah. No, the state board is appointed. By whom? By the governor. So we should change the interpretation of the statutes depending on who's sitting in the governor's mansion? No, Your Honor. You should examine the interpretation of the statute that is before you and give it deference when it is made by an agency with expertise. If an agency or a board interprets a statute only once, then in that particular case there's a strong argument to say we give deference to their interpretation. Although we're not bound to do so if we find that it's wrong. Of course. But if an agency interprets it one way on Monday and another way on Tuesday, who is to say that we're supposed to give deference to the Tuesday interpretation as opposed to the Monday interpretation? The Commonwealth Edison case that we cite in our reply brief indicates that the deference according to the agency interpretation is not dependent on the duration or the consistency of that interpretation. This court interprets the current, this court examines the current interpretation. Oh, no, no. We examine the current interpretation. But the question is what do we give deference to? No, you're right, Your Honor. My point is that case specifies that you give deference to the current interpretation regardless of duration or past consistency of that. And just one final point to address a question you raised, Justice Connors, about the recalculation. There was a claim that was submitted for general state aid that was found to be incorrect. The statute does not specify who made the error. The statute does not state that it is an error in the claim made by the district submitting the claim or by the State Board in calculating the claim. The statute is silent on that. So who made the claim here? Claims for general state aid are submitted by the whole school district. Exactly. And so what happens is the State Board calculates the general state aid and then determines how much of that state aid should go to a commission-authorized charter school. And the Rockport v. Gail case indicates that the statute should be interpreted broadly to correct past errors. Okay. Thank you very much, Your Honors. Thank you. The matter will be taken under advisory. Court is adjourned.